## BARNER *v.* KISH.

1. AUTOMOBILES—REAR-END COLLISION—NIGHTTIME—GREAT WEIGHT OF EVIDENCE.

   Verdict for defendant motorists who collided with rear end of plaintiffs' car after it had come from private driveway onto public highway at 9:30 p.m. late in August *held,* not contrary to the great weight of the evidence.

2. TRIAL—INSTRUCTIONS—COMMENT ON EVIDENCE—REAR-END COLLISION.

   Trial judge *held,* not to have exceeded his authority in commenting on the evidence introduced in action against motorists who collided at 9:30 p.m. late in August with rear end of plaintiffs' car after it had proceeded some 165 feet south on road and driver claimed to have seen lights from defendant's car some 2,000 feet to the north, where trial judge repeatedly instructed jury that they were the triers of the facts and should come to their conclusion solely from the evidence and the testimony presented and that his statements as to speed and other matters were not to be considered as his expression of opinion but as a method to be used in considering all the evidence in the case (Court Rule No 37, § 9 [1945]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] See, generally, 5 Am Jur, Automobiles § 743.
[2] 53 Am Jur, Trial §§ 76, 78.
[3] 5 Am Jur, Automobiles §§ 734, 739.

3. AUTOMOBILES—REAR-END COLLISION—NIGHTTIME—INSTRUCTIONS
   —ASSURED CLEAR DISTANCE AHEAD.
    Instruction that the rule as to assured clear distance ahead
        meant that a motorist must drive at such a rate of speed
        that he can see objects within his vision that are ahead of
        him and stop before hitting them and that such rule does not
        apply until there is a visible object on the road in front of
        him and does not apply when an object is suddenly put in front
        of him, it being his duty then to avoid a collision if a reason-
        ably prudent person could have done so, did not constitute re-
        versible error in action arising from rear-end collision some 165
        feet from place where plaintiff turned out of private drive onto
        public highway in front of defendant at 9:30 p.m. late in
        August (CL 1948, § 256.305).
    CARR and SHARPE, JJ., dissenting.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted October 5, 1954. (Docket Nos. 2, 3, Calendar
Nos. 46,105, 46,106.) Decided December 29, 1954.

Case by Willie L. Barner against Stephen Kish
for personal injuries arising from automobile col-
lision. Case by Jesse Barner against Stephen Kish
for property damage, medical and other expense.
Actions consolidated for trial and appeal. Verdicts
and judgments for defendant. Plaintiffs appeal.
Affirmed.

*Dann & Rosenbaum,* for plaintiffs.

*Carl F. Davidson* (*Roy P. Nelson,* of counsel),
for defendant.

KELLY, J. Willie L. Barner and her husband,
Jesse Barner, plaintiffs and appellants, appeal in
separate cases from a jury verdict and judgments
for defendant. The husband was not in the automo-
bile with his wife at the time of the collision and
bases his cause of action on loss of companionship
of his wife and her services as a housekeeper, dam-

ages to his automobile, and medical and hospital expenses.

On August 30, 1949, about 9:30 p.m. Willie L. Barner drove her car eastward along a neighbor's private driveway. Plaintiff testified that at the point where the driveway entered into Sumpter road she brought her car to a stop before entering the highway; that she noticed the reflection of defendant's headlights on the other side of the brim of the hill to the north, over 2,000 feet distant. She testified that she turned south on Sumpter road and after driving 165 feet south at a speed of not more than 10 miles per hour her car was struck in the rear by the car driven by defendant and appellee.

Defendant testified that he was traveling south on Sumpter road at a speed between 40 and 45 miles per hour and that when a car driving north and approaching him dimmed its lights he dimmed the lights on his car. He said:

"Right after that I seen an object coming out of the driveway, and I was almost on top of the car,— maybe 1, 2, 3 car lengths, I don't know. I swerved my car to the left, jammed the brakes on, and I saw this car coming, and the only thing I could do was avoid a head-on and wheeled my wheels to the right again, and had my brakes on. From then on I don't remember. I was knocked out, and the next thing I woke up in the hospital. I hit the steering wheel."

The only other witness to the collision was a Mr. Van Loon, who was driving north on the same road on which plaintiff and defendant were proceeding in a southerly direction. He testified:

"I saw the accident involved in this case. At the time I was traveling north on Sumpter road in a 1947 Ford. I was driving about 35 miles per hour and just before the accident happened, I passed a

car going in a southerly direction. I dimmed my lights and the car dimmed his lights.

"*Q.* Then what if anything occurred?

"*A.* Shortly after we dimmed our lights, just a fraction of a second this other car come out from the side of the road. I never seen it. It was out in the road in front of this other car. It seemed to me to be coming right out of a field.

"*Q.* Was it in motion at the time?

"*A.* I would say it was; yes, sir. It just came out in front of other fellow's headlights that was coming the other way at me."

Witness Van Loon estimated that defendant was driving at approximately 35 miles per hour just previous to the impact. He testified that after the collision he brought his car to a stop within 35 or 40 feet, returned to defendant's car and found defendant unconscious behind the wheel; that he did not remain at this car because the windshield was not broken and he did not feel that the defendant was too seriously hurt; that he ran down the road to where plaintiff's car was in the ditch with both doors open but no one in the car; that he then heard plaintiff screaming on the porch of a home nearby and when he approached her and asked if she was hurt she said that her leg was hurt but that that was all.

Appellants contend that the verdict is contrary to the great weight of the evidence. There is nothing in the record to sustain such a contention. The only disinterested witness sustains defendant's testimony that plaintiff turned onto the road in front of defendant's car in such a manner as to make the collision inevitable.

Appellants also contend that the trial judge did not properly instruct the jury. Court Rule No 37, § 9 (1945), provides:

"The court shall instruct the jury as to the law applicable to the case whenever a verdict is to be rendered, and in his charge may make such comment on the evidence, the testimony and the character of the witnesses as in his opinion the interests of justice may require."

The trial judge in his instructions analyzed the testimony of plaintiff to show that if such testimony was correct the defendant would have to be traveling at between 130 to 160 miles per hour. He reached this conclusion on the testimony of plaintiff that the collision occurred approximately 165 feet from where plaintiff turned from the driveway onto the road; that at that time she saw the lights of the defendant's car approximately 2,000 feet away and that her car was traveling at about 10 miles per hour at the time of the impact.

An examination of the entire charge, however, discloses that the trial judge repeatedly instructed the jury that they were the triers of the facts; that they should come to their conclusion solely from the evidence and the testimony presented, and that they were not to consider his statements in regard to the matter of speed, et cetera, as his expression of opinion, but as a method the jury might use in considering all the evidence in the case. From a reading of the whole charge it is apparent that the trial court did not exceed his authority in the comments made by him in his instructions to the jury.

Appellants complain of the trial court's charge to the jury covering the rule of assured clear distance ahead.* The court instructed the jury in this respect that:

"It [assured clear distance ahead] means that a man must drive at such a rate of speed that within his vision he can see objects that are ahead of him

* See CL 1948, § 256.305 (Stat Ann 1947 Cum Supp § 9.1565).— REPORTER.

in such a way that he can bring his car to a stop before he hits those objects. That is the rule of law as to the assured clear distance ahead, and the obstacle in the road ahead of a driver can be another automobile going in the same direction that he goes. That rule as to the assured clear distance ahead does not mean that a driver on the road can never catch up to and pass from the rear a car ahead of him. He has that right to catch up with a car ahead of him. He has that right to catch up with a car ahead of him, and he has the right to pass that car under the rules that are laid down in the law. But the rule of assured clear distance ahead means the distance between the driver and an obstacle on the road in front of him. The rule as to assured clear distance ahead never comes into being until there is a visible object on the road in front of the driver. There never was an opportunity in this case for the rule of assured clear distance ahead to come into being until this plaintiff drove her car out upon the road in front of the defendant. The sudden emergency created by somebody coming out upon the road ahead of you is not a case which involves the rule of assured clear distance ahead at all. It is a rule which involves another duty, and a quite different duty. The duty that was imposed upon him under those circumstances was to see her as soon as a reasonably prudent man would have seen her, and to stop his car and prevent a rear-end collision if a person of reasonable prudence could and would have stopped his car and avoided a collision. But the plaintiff must prove that the circumstances were such that an ordinarily prudent person would have seen her in time so that by the exercise of that ordinary prudence he could and would have stopped before he hit her. And if the plaintiff has not proved [by] a fair preponderance of the evidence that such reasonable person exercising such reasonable care could and would have seen her after the time when she got into the highway, and up to the time when the collision took place, and would have stopped and

have prevented a collision, then the evidence does not warrant a finding that this defendant was guilty of negligence on his part in the way he handled himself and his car after she got out into the road in front of him. I again suggest for your reasonable consideration that the time was short between the time when she got upon the road and the time when the collision took place; not measured in minutes not measured in half-minutes; but measured in seconds. It could have been 10 seconds. It could have been 15 seconds. That is something for you to determine. But the duty of the defendant to see the plaintiff and bring his car to a stop before running into the rear end of her car did not arise until she got out on the road and until a reasonably prudent person would have seen her, and it could only have been performed in the prevention of an accident if a reasonable person, after having made that discovery, could and would have stopped without touching her car. Those are the only 2 grounds upon which plaintiff claims actionable negligence in this case. You conclude that the defendant was actionably negligent if you find he was going unreasonably fast, or if you find that after he discovered her on the road that he did not do what a reasonably prudent man would have done under all the circumstances."

We do not think this instruction created reversible error.

Judgments affirmed. Costs to appellee.

BUTZEL, C. J., and BUSHNELL, BOYLES, REID, and DETHMERS, JJ., concurred with KELLY, J.

SHARPE, J. (*dissenting*). I am not in accord with the result reached in the opinion of Mr. Justice KELLY. It is undisputed that the collision occurred on August 30, 1949, about 9:30 p.m., on a dark night; that plaintiff drove her car east along a private driveway, and where the driveway entered the through highway she stopped, looked both ways, proceeded into the intersection, turned right, and ar-

rived at a point of about 165 feet south from the intersection when the collision occurred. At the time of the collision she was traveling at a speed of not to exceed 10 miles an hour.

For the purpose of this opinion I shall relate the testimony given by defendant most favorable as to him. Defendant testified:

"*Q.* Describe to us what took place?

"*A.* I was going south. * * *

"*Q.* What speed were you traveling?

"*A.* I would say I was going between 40 and 45 miles an hour. * * *

"*A.* He was heading north. I cannot judge how far he was. I don't say he was too far away. He blinked his lights, and dimmed his lights, and I dimmed my lights back immediately. Right after that I seen an object coming out of the driveway, and I was almost on top of the car,—maybe 1, 2, 3 car lengths, I don't know. I swerved my car to the left, jammed the brakes on, and I saw this car coming, and the only thing I could do was avoid a head-on and wheeled my wheels to the right again, and had my brakes on. From then on I don't remember."

At the close of all testimony plaintiffs' counsel requested the court to give the following instructions, among others, to the jury:

"That one must so drive his automobile so as to be able to stop same within the range of vision requires one to operate his automobile so that he can perform all of the manual actions necessary to bring his automobile to a complete stop within such range. *Thompson* v. *Southern Michigan Transportation Company,* 261 Mich 440; *Russell* v. *Szczawinski,* 268 Mich 112; *Buchel* v. *Williams,* 273 Mich 132.

"That if the defendant in these cases was so blinded by the lights of another approaching automobile so that he could not see ahead for the distance within which he could stop, it was his duty to bring his automobile under such control that he could stop

immediately, and it is further his duty that if he could not see, he must then stop his automobile. *Ruth* v. *Vroom,* 245 Mich 88 (62 ALR 1528).

"That it is the duty of the defendant in these cases to anticipate the possibility of interference with his vision by the said lights of an approaching automobile and if he cannot see because of such blinding lights he must slow his automobile to such a speed that he can, at all times, stop within the distance he can see ahead clearly, and if he cannot so see ahead, then it is his duty to bring said automobile to a complete stop. *Ruth* v. *Vroom, supra.*

"That if the lights of the approaching automobile, proceeding in the opposite direction, interfered with the vision of the defendant, it was his duty to slacken his speed and have his car under such control that he could have stopped it immediately, if necessary. *Sellon* v. *Tanner,* 252 Mich 231."

The trial court refused plaintiffs' request, but instead gave the instructions as related in the opinion of Mr. Justice KELLY. The principal question in this case is the claimed error on the part of the trial court in failing to give the requested instructions. The answer to this question can be found in the testimony as related by plaintiff, Willie L. Barner, and defendant, Stephen Kish. Assuming that plaintiff, Willie L. Barner, was traveling at a speed of 10 miles an hour and defendant at a speed of 40 to 45 miles an hour, then defendant was traveling 4 to 4–1/2 times as fast as plaintiff just prior to the collision. Assuming that plaintiff traveled a distance of 165 feet after she entered the highway, then defendant must have traveled, during that time, a distance of from 660 to 742.5 feet. It follows that at the time plaintiff entered the highway defendant was from 495 to 577.5 feet north of the intersection. It is also worthy of note that Elwood Van Loon, a witness for defendant, testified that at the time of the collision he was traveling at a speed of 35 miles an hour and

that he stopped his car within 40 feet. Michigan statute CL 1948, § 256.305 (Stat Ann 1947 Cum Supp § 9.1565), provided:

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other condition then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

In *Lewis* v. *Yund*, 339 Mich 441, 444, we quoted with approval the following:

"In *Winslow* v. *Veterans of Foreign Wars National Home*, 328 Mich 488, we said (p 493):
" 'The fixed, unchangeable and mandatory duty of this statute is imposed upon all drivers. The statute is invoked with equal force when a driver runs into an object whether it is moving or at rest and whether he is overtaking the object or the object is approaching toward him.'
"In *Nevill* v. *Murdey*, 333 Mich 486, we said (p 488):
" 'It is well settled by many decisions of this Court that it is negligence as a matter of law for one to drive an automobile along a public highway in the dark at such speed that it cannot be stopped within the clear distance that objects can be seen ahead of it by the driver.' "

In *Lewis* v. *Yund, supra*, defendant's truck driver was traveling west on US-12 and reached a point about 500 feet east of plaintiff's car when he first noticed plaintiff's car. He was traveling at a speed of about 45 miles an hour. He continued at this speed until he was about 200 feet east of plaintiff's car. At this point a Pontiac car traveling in the same direction passed defendant's truck and turned

back in the right lane of traffic, turned left and went around plaintiff's car. Defendant's driver approached to about 100 feet behind plaintiff's car when the Pontiac car turned to the left in passing plaintiff's car. When the Pontiac car turned to the left defendant's driver for the first time noticed that plaintiff's car was not moving. Defendant's driver applied his brakes, but was unable to avoid a collision. We there held that defendants were guilty of negligence as a matter of law. In that case defendant's driver first saw plaintiff's car at a distance of about 500 feet. In the case at bar defendant should have seen plaintiff's car when she entered the intersection. At this time defendant was not less than 495 feet to the north and while it was dark, yet defendant should have seen the lights on plaintiff's car immediately before it was turned to the right upon entering the main highway. In each case the defendant was confronted with a situation where he could not turn to the left because of a car coming in the opposite direction. In the *Lewis Case, supra,* defendant was approximately 100 feet behind the parked car when he noticed that it was not moving. In the case at bar defendant was traveling at a speed of 40 to 45 miles an hour and "maybe 1, 2, 3 car lengths" away when he first noticed plaintiff's car.

Under CL 1948, § 256.346 (Stat Ann 1947 Cum Supp § 9.1606), defendant was required to have head lamps of sufficient intensity to reveal a person or vehicle at a distance of 350 feet, and he is therefor charged with seeing plaintiff at a distance of 350 feet. The fact that defendant may have been watching the car coming from the opposite direction or not watching the road ahead does not release him from his duty to see objects ahead, either stationary or moving, and in accord with the "assured clear distance" rule. In the case at bar the court could have charged the jury that where a vehicle is struck from

the rear it is prima facie evidence of the negligence of the defendant. See CL 1948, § 256.511 (Stat Ann § 9.1691).

Under the facts in this case it was error on the part of the trial court to refuse to give the instructions requested by plaintiffs. It follows that a new trial should be granted. Plaintiffs should recover costs.

Carr, J., concurred in reversal.