## TACIE *v.* WHITE MOTOR COMPANY.

1. AUTOMOBILES—TRUCKS—NIGHTTIME—CONTRIBUTORY NEGLIGENCE.

The issue of contributory negligence of southbound trucker, plaintiff's decedent, in action for his death when he collided with defendants' tractor-trailer parked partially on the pavement at about 4 a.m. *held,* to depend upon whether defendants' vehicles were illuminated by their own lights or by decedent's headlights and upon the inference from proofs of illumination that decedent must have seen defendants' equipment, or should have seen them, in time to avoid the collision (CLS 1956, §§ 257.657, 257.688, 257.699, 257.713, 691.581, 691.582).

2. APPEAL AND ERROR—MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.

Evidence is reviewed in the light most favorable to the plaintiff on appeal from denial of motion for judgment *non obstante veredicto.*

3. AUTOMOBILES—TRUCKS—LIGHTS—CONTRIBUTORY NEGLIGENCE.

The issue of contributory negligence for violation of the assured-clear-distance rule by plaintiff's decedent, a southbound driver with a 20-ton load of salt, in colliding with defendant's southbound tractor-trailer at least partially parked on the pavement at about 4 a.m., was a matter for consideration of the jury, where there was a dispute in the testimony as to whether the lights on defendants' equipment were operating properly, discernibility of defendants' equipment as presented by plaintiff's expert, and speed at which decedent was driving (CLS 1956, §§ 257.657, 257.688).

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 5A Am Jur, Automobiles and Highway Traffic §§ 702, 716.
[2] 5 Am Jur 2d, Appeal and Error § 886.
[3] 5A Am Jur, Automobiles and Highway Traffic §§ 290, 710.
[5] 38 Am Jur, Negligence § 286.
[6] 5A Am Jur, Automobiles and Highway Traffic § 1097.

4. Same—Negligence.

Negligence as a matter of law is ascribed to a driver, now deceased, when the object ahead of him and the surrounding conditions were such that, had he exercised due care, he must have seen it, but negligence is a question for the trier of facts when the confronting object and attending conditions were such as to be undiscernible to a person approaching the same in the exercise of ordinary care (CLS 1956, §§ 257.657, 257.688).

5. Negligence—Contributory Negligence—Burden of Proof.

The burden of proving plaintiff's contributory negligence is presently upon the defendant (Court Rule No 23, § 3a [1945]).

6. Automobiles — Rear-End Collision — Nighttime — Instructions — Contributory Negligence — Common Law — Statutes — Lights — Speed.

Instructions to jury in action arising from rear-end collision by plaintiff's decedent, operating a southbound tractor-trailer combination with a 20-ton load of salt, with defendants' tractor-trailer vehicles parked at least partially in the southbound lane, which prescribed standards of evaluation of decedent's conduct derived solely from the common law was reversible error, where the standards first applicable were prescribed by statute in that if defendants' vehicles were found to have been properly illuminated, then the statute prescribed decedent should be found guilty of negligence if driving at such a speed as would not permit him to stop within the assured clear distance ahead, and only if defendants' vehicles were found undiscernible to a person of ordinary care should common-law standards determine decedent's negligence (CLS 1956, §§ 257.657, 257.688, 257.713).

Appeal from St. Clair; Streeter (Halford I.), J. Submitted April 11, 1962. (Docket Nos. 54, 55, Calendar Nos. 49,278, 49,296.) Decided December 7, 1962. Rehearing denied February 6, 1963.

Case by Irene F. Tacie, administratrix of the estate of Shirley R. Tacie, deceased, against White Motor Company, an Ohio corporation, Joseph F. Mercurio, Vincent J. Lopiccolo, and Ernest E. Cocco, doing business as Port Huron Cooperative Fruit House, Anthony Mercurio, Aldo Cocco, Alphonse

Mercurio, Port Huron Cooperative Fruit House, Inc., a Michigan corporation, and J. F. Bramblett and C. R. Jewell, doing business as B & J Produce of Louisville, Kentucky, for damages under the death act resulting from rear-end collision of tractor-trailer units August 20, 1957. Default of defendants Bramblett and Jewell entered. Verdict and judgment for plaintiff against remaining defendants, who take separate appeals. Reversed and remanded for new trial.

*Peter E. Bradt,* for plaintiff.

*Nunneley & Nunneley,* for defendant White Motor Company.

*Walsh, O'Sullivan, Stommel & Sharp,* for defendants Mercurio, Lopiccola, Cocco, and Port Huron Cooperative Fruit House, Inc.

Souris, J. Plaintiff, widow of Shirley Tacie and administratrix of his estate, recovered a judgment based upon a jury verdict in the amount of $100,000 against all the defendants in this action brought under the wrongful death act. CL 1948, §§ 691.581, 691.582 (Stat Ann 1959 Cum Supp §§ 27.711, 27.712). This action against multiple defendants consumed 24 trial days extending over 3 months and in addition to days spent taking testimony by deposition both before and during the trial. Two of the defendants, Bramblett and Jewell, did not appear and were defaulted.

This appeal taken by the remaining defendants challenges the trial judge's ruling on their motions for judgment *non obstante veredicto* and for new trial. The principal claims on appeal are that the trial judge should have directed a verdict or entered a judgment *non obstante veredicto* in defendants'

favor on the ground that plaintiff's decedent was guilty of contributory negligence as a matter of law for violation of our assured-clear-distance statute, section 627 of the Michigan vehicle code, CLS 1956, § 257.627 (Stat Ann 1952 Rev § 9.2327), and that a new trial should have been granted on defendants' motions because of prejudicial errors contained in the judge's charge to the jury. We find that the judgment must be reversed and new trial ordered because of an erroneous jury charge prejudicial to the defendants. However, because a new trial will be required and issues raised by defendants' motions for directed verdict possibly may recur, we will first pass upon those issues.

Shirley Tacie was killed instantaneously in August of 1957 about 1 hour prior to sunrise when his tractor-trailer carrying 40,000 pounds of salt collided with the rear of a tractor-trailer parked at least partially upon the traveled portion of a highway immediately behind another similarly stationary tractor-trailer. Defendant Jewell was the operator of the tractor-trailer struck by plaintiff's decedent; defendant Bramblett owned the trailer; and both, jointly, were purchasing the tractor from defendant White Motor Company. The remaining defendants, whom we shall call the Fruit House defendants, owned the other stationary tractor and trailer.

Jewell was driving his tractor-trailer unit southwesterly along Gratiot avenue north of New Haven shortly after midnight when he pulled into and parked on the driveway of a closed gasoline station for reasons not material to our decision. Several hours later, at about 4 a. m., when he attempted to proceed on his journey, he was unable to start the engine of his tractor. He managed, somehow, to flag down the driver of the Fruit House tractor-trailer, Goosby, for assistance. By attaching a chain from the rear of the Fruit House trailer to the front of

Jewell's tractor, Goosby managed to tow Jewell's tractor and trailer from the gasoline station driveway onto the southwesterly lane of 3-lane Gratiot avenue. Shortly beyond the driveway, while the 2 chain-connected tractor-trailer units were proceeding southwesterly along Gratiot avenue, the chain between them parted and the 2 units were brought to a stop at least partially on the pavement. Goosby and Jewell were attempting to attach the chain again to the Fruit House trailer and the Jewell tractor when they heard a vehicle approaching from the north and saw its headlights some distance away. Jewell ran to the back of his trailer with a flashlight, which he waved near the pavement in an effort to direct the attention of the approaching driver to the obstacles in his path. The approaching vehicle was the heavily loaded tractor-trailer driven by plaintiff's decedent. Apparently without slackening speed or deviating from course, Tacie collided with the rear of the Jewell trailer with such force that the Jewell tractor and trailer were pushed into the rear of the Fruit House tractor and trailer and both units were propelled over 170 feet off the highway across the adjoining shoulder and into a ditch running parallel with the highway. The force of the collision caused a fire which completely enveloped Tacie's tractor. So intense were the flames that Goosby and Jewell, and a passerby, were prevented even from attempting to remove Tacie from the flaming wreck.

Defendants' claim is that Tacie was contributorily negligent as a matter of law because he did not stop within his assured clear distance ahead to avoid collision with their vehicles which he must have, or should have, seen. Although they acknowledge failure of their drivers to place on the pavement in front of and behind their vehicles the fusees, flares or electric lanterns required in such circumstances as warning devices by section 713 of the vehicle code, CLS

1956, § 257.713 (Stat Ann 1960 Rev § 9.2413), defendants claim that headlights, stop lights, clearance lights, reflectors and other lights required by section 688, CLS 1956, § 257.688 (Stat Ann 1960 Rev § 9.-2388) were operating properly on their vehicles and made them visible to decedent in ample time to permit him to avoid the collision. The Fruit House defendants urge a related claim upon us. They concede the headlights on decedent's tractor conformed with the provisions of section 699, CLS 1956, § 257.699 (Stat Ann 1960 Rev § 9.2399), which require headlights of such white light intensity "as to reveal persons and vehicles at a distance of at least 350 feet ahead" on high beam and at least 100 feet ahead on low beam. From this, these defendants argue that Tacie must be presumed to have seen the obstacles in his path within the range of his own headlights and they conclude that his failure to avoid the collision within his assured clear distance ahead conclusively proves his contributory negligence as a matter of law.

Defendants' claim that the decedent was guilty of contributory negligence as a matter of law depends upon proof that their vehicles were illuminated by their own lights or by decedent's headlights. It also depends upon the inference it is said we are compelled to make from such proofs of illumination that decedent must have seen defendants' tractors and trailers, or that he should have seen them, in time to avoid the collision. *Rueger* v. *Hamling,* 355 Mich 489, is cited by defendants as controlling. Defendants claim that Tacie was violating the assured-clear-distance statute by driving at a rate of speed that did not permit him to stop within his range of vision, there being no circumstances legally excusing such conduct. Defendants contend, in effect, that anyone driving along a highway at night in a vehicle properly equipped with headlights who fails to discover an

obstacle of the size of their tractors and trailers in time to avoid running into it on the traveled portion of the road must be regarded as having violated the assured clear distance statute and is, thereby, guilty of negligence as a matter of law.

Defendants, like so many other appellants who bring to us appeals from trial court denials of motions for judgment *non obstante veredicto,* consistently disregarded our requirement that such cases be reviewed in the light most favorable to plaintiff. *Wisnaski* v. *Afman,* 341 Mich 453, and *Hoffman* v. *Burkhead,* 353 Mich 47. When this record is reviewed in such light, defendants' factual premises do not survive analysis.

There was evidence from some of plaintiff's witnesses that there were no lights on defendants' vehicles at about the time of collision. Other witnesses testified that they had passed defendants' vehicle and that what lights there were, were so dim they could barely be seen. Several hours before the collision, a truck driver observed Jewell's rig parked in the driveway of the closed gasoline station. He testified the clearance lights on the back of Jewell's trailer were very dim and "I thought at that time, if that boy don't get started he ain't going to get started at all. The battery must have been nearly dead then, they were so dim." On his return trip along the same route, he saw the Fruit House truck backing into the driveway and "I see the same truck still sitting back in there by them pumps and his lights then were almost nothing." This witness passed within 60 feet of the defendants' vehicles, the distance from the highway to the gasoline station.

Another truck driver, driving a bakery company's tractor and trailer at a speed of about 45 to 48 miles per hour, safely navigated around the defendants' lethal obstacles minutes before Tacie's approach. This driver testified it was still dark and he had all

his lights on, tractor headlights and trailer lights. As he was driving in the southwesterly-bound lane he suddenly saw something, "an awfully big object dark in front of me and it came to me at the time it was an outfit sitting on the road and so I just swung, slammed on my brakes a bit and swung to the left to go by." As he went by, he noticed another tractor-trailer, which he recognized as the Fruit House unit, in front of the first. He described his experience as a close call, "close enough to suit me, too close." His testimony continues:

"*A.* The lights on the one in the back were on but they were so dim they looked just like stars or something, that is what they looked like to me. They were so dim you never noticed them until you got practically on top of it.

"*Q.* By the way, you were driving in what lane?

"*A.* I was driving in the right lane.

"*Q.* Where were these two semi's?

"*A.* They were both in the right lane stopped.

"*Q.* As you came up behind them could you see from behind any reflection of headlights from either one on the pavement?

"*A.* I did not see no lights like that at all.

"*Q.* Did you see any silhouette of these objects, was anything lighted on the far side of them?

"*A.* No, you mean reflection or something?

"*Q.* Yes.

"*A.* I never seen nothing like that whatsoever.

"*Q.* Do you have any idea how close you were to this first trailer before you knew what it was?

"*A.* Well, I ain't too familiar with how many feet it would be. I just had enough time to swing around is all I can say. If I hadn't noticed it when I did I would never have made it."

Such testimony, contradicted by defendants' testimonial claims that all lights on their tractors and trailers were operating properly, clearly presented a disputed issue of fact essential to defendants' af-

firmative defense of contributory negligence based upon the assured-clear-distance statute which it would have been improper for the trial court to decide as a matter of law.

We have recently reviewed the circumstances in which determination of negligence or contributory negligence by failure to comply with our statutory assured-clear-distance rule is for the court and those circumstances in which such determination must be left for the jury. *Nass* v. *Mossner*, 363 Mich 128. Following the lead of *Rueger* v. *Hamling, supra,* we carefully noted the consequential differences between the testimonial facts of *Rueger* and of such cases as *Martin* v. *J. A. Mercier Co.*, 255 Mich 587 (78 ALR 520); *Bard* v. *Baker,* 283 Mich 337; *Vashaw* v. *Marquette Public Service Garage,* 288 Mich 363; and *Barner* v. *Kish,* 341 Mich 501. In *Nass,* we restated the considerations which dictate whether a judicial verdict or a jury verdict is to be made (p 132):

"The pertinent language of the statute in question is 'assured, clear distance ahead.' We think the above decisions urged by the respective parties and other cases as well, relating to that statute, are consistent even though in some the question of the driver's negligence was held to be a matter of law and in others a question of fact. When the object ahead of the driver and the surrounding conditions were such that, had he exercised due care, he must have seen it, negligence as a matter of law was ascribed to him. When the size or character of the confronting object and attending conditions were such that it might have been 'undiscernible to a person approaching the same in the exercise of ordinary care,' then the question of his negligence was one of fact for the trier of the facts."

Perhaps passing reference should be made to the fact that this trial occurred after the effective date

of section 3a of Court Rule No 23 (1945),* by which the burden of proving plaintiff's contributory negligence in such cases as this was transferred from the plaintiff to the defendants. They had the burden of proving that plaintiff's decedent, in the exercise of his presumed due care, must have seen their trailers in time to stop or turn aside to avoid collision. Even without any more evidence than that summarized above, it cannot be said that defendants carried that burden beyond necessity for jury determination. But there was more evidence in the case that defendants' vehicles were undiscernible to Tacie,—opinion testimony offered by the plaintiff from a witness qualified as an expert in physiological optics, opthamology, and highway safety.

The expert witness conducted a number of experiments the purpose of which was to determine the degree of visibility of the back of the Jewell trailer at the place and time of the collision in which Tacie lost his life. Using instruments and charts designed for the purpose of measuring the capacity of objects to reflect light, the witness was able to compute the distance from which a normal, healthy, young human being could discern the back of Jewell's trailer if the lights thereon were operating properly and the distance from which such a person could discern the back of Jewell's trailer illuminated only by headlights such as were on decedent's tractor on the night of the collision. Such computations took into account the brightness of the night of the collision, computed for the place of collision from data available to those in the field of this witness's specialty, and other factors which were known to exist at that time and which were determinable by the witness.

The witness testified that the rear of Jewell's trailer, which was painted red, reflected almost exactly

* 352 Mich xiv.

the same amount of light reflected by the pavement and, for that reason, the lower portion of the trailer would have been extremely difficult to discern in any light. He further testified that the upper part of the trailer was not much more readily discernible, there being only a slightly greater contrast between the trailer and the sky, the brightest background against which the trailer could have been silhouetted. He concluded that under those conditions, if there were no lights on the back of the trailer, that it would not have been possible for a driver, even though young and alert, to have seen the back of Jewell's trailer in headlights such as were on Tacie's tractor, if on high beam, at a distance greater than 150 feet. He said that if the lights were on low beam the trailer could not be discerned except within a distance of 125 feet.

Taking this favorable view of the evidence, we find no error in the trial judge's refusal to take from the jury the question whether Tacie was contributorily negligent. Unlike *Rueger* v. *Hamling, supra,* the proofs here were such that the court could not conclude as a matter of law that defendants' vehicles would have been discernible and avoidable to a person approaching them in the exercise of due care. Whether Tacie could have seen the obstruction in time to stop or turn aside was for jury determination of his compliance with the statutory rule of the road in addition to such common-law duties as these facts disclose. *Cooke* v. *Brown,* 365 Mich 172.

Appellant White Motor Company also claims that the trial judge erred in failing to direct a verdict for defendants and in denying their motions for judgment *non obstante veredicto* because the plaintiff's own proofs, it is claimed, established conclusively decedent's failure to have headlights which would "reveal persons and vehicles at a distance of at least 350 feet ahead" as required by section 699 of the

vehicle code, CLS 1956, § 257.699 (Stat Ann 1960 Rev § 9.2399). The evidence to which appellant refers is the testimony of the expert witness summarized above in which he said that the back of Jewell's trailer could not be seen in headlights such as were on Tacie's tractor, if on high beam, at a distance greater than 150 feet. The principal error of this claim is that it overlooks the absence of proof, sufficient as a matter of law, that such assumed statutory violation was a proximate cause of the collision. But even beyond that, the evidence referred to was simply that this particular trailer, because of its peculiar coloration, could not be seen at a distance greater than 150 feet. The evidence was not sufficient to have justified entry of a directed verdict for defendants.

The same appellant also claims the evidence conclusively established decedent's speed at in excess of 60 miles per hour and that such speed, being above the stipulated legal speed limit of 45 miles per hour, constituted contributory negligence as a matter of law. As indicated above, the evidence concerning decedent's speed was conflicting and it would have been error for direction of a verdict or for entry of judgment *non obstante veredicto* in favor of defendants on this ground.

We turn now to the issue on appeal which compels our reversal of this judgment. Defendants claim a number of errors were committed by the trial judge in denying their motions for new trial. The Fruit House defendants claim that the trial judge's charge to the jury did not instruct the jury properly on the statutory standard of care imposed upon plaintiff's decedent by the assured-clear-distance rule and that his instructions to the jury that decedent's contributory negligence could be determined on the basis of the "ordinary prudence" standard of care were composed in such a way that defendants were effectively deprived of their right to have decedent's contrib-

utory negligence determined by the jury by application of the statutory standard. See *Cooke* v. *Brown, supra.*

As we noted above, this is a case which requires jury determination whether defendants' vehicles, under all of the attending circumstances, were or were not discernible and avoidable to a person approaching the same in the exercise of ordinary care. The jury should have been instructed that from the conflicting evidence produced at the trial, it could find that decedent saw, or should have seen, defendants' vehicles in sufficient time and from an adequate distance to permit him to stop in order to avoid the collision and that, if it so found, decedent was negligent for failure to drive his vehicle at a speed which would permit him to stop within the assured clear distance ahead. The jury should also have been instructed that if, on the other hand, it found that the defendants' vehicles were "undiscernible to a person approaching the same in the exercise of ordinary care," then the jury would have to determine the issue of decedent's contributory negligence by application of the common-law standards of negligence. Instead, the instructions given to this jury could not have been understood by the jury to mean other than that it was to determine the issue of decedent's contributory negligence solely on the basis of the common-law standards of negligence.

The charge was necessarily a long one, covering approximately 50 typewritten pages in the record. The first 11 pages contain argumentative and conclusionary claims of the parties. The last 16 pages contain the court's instructions on damages and possible verdicts. The balance of the charge consists of general instructions normally required in a case of this nature and in addition specific instructions requested by the parties, some of which latter were repetitious of the judge's general instructions.

At about the middle of the charge, the judge redefined common-law negligence in terms of reasonable care and ordinary prudence and immediately thereafter instructed the jury that Tacie was not required to anticipate the negligent acts of others; that he had a right to expect that no vehicle would be stopped on the highway; and that he had a right to expect that any vehicle ahead of him would have a red light visible from a distance of 500 feet to the rear.    At this point in his charge the following language appears, the only reference in the entire charge relating to the jury's function in determining compliance or noncompliance by the decedent with the assured-clear-distance statute:

"CLS 1956, § 257.627 (Stat Ann 1952 Rev § 9.2327) provides as follows:

" 'Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than or less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other condition then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured, clear distance ahead.'

"The law and rule as to stopping within the assured clear distance ahead never comes into being until there is a visible object on the road in front of the driver."

Elsewhere in the charge, the judge read to the jury, without further comment, all of the statutory provisions pertaining to lighting equipment required on trucks operating on the highways and warning devices required to be placed on vehicles disabled on the highway.    In a single connected charge, he also instructed the jury that violation of law is negligence in and of itself, and that if the "surviving drivers" violated the law and such violation was a proximate cause of the collision, then the "surviving drivers"

would be guilty of actionable negligence. Nowhere in the charge is there a similar instruction with reference to the consequences of the jury's possible finding that decedent violated the assured-clear-distance statute.

We conclude that the chage given to the jury did not instruct it properly with reference to its obligation to determine as a matter of fact compliance or noncompliance by Tacie with the requirements of the assured clear distance statute, nor did it instruct the jury what consequences would follow from such determination. As given to the jury, the charge practically eliminated the alleged statutory violation from defendants' affirmative defense of contributory negligence. For this reason the trial judge should have granted a new trial as he was requested by defendants to do on this ground, among others. We are, consequently, required to reverse the judgment based upon the jury's verdict and remand this case for new trial.

Costs to appellants.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., concurred.

BLACK, J., did not sit.