BURKHARD ET AL., APPELLANTS, *v.* SHORT, ADMR., ET AL.;
GENERAL MOTORS CORP., Appellee.

(No. 377—Decided August 4, 1971.)

*Mr. Thomas E. Hackett,* for appellants.
*Mr. William A. Bish,* for administrator Short.
*Messrs. Finn, Manahan & Pietrykowski* and *Mr. John Pietrykowski,* for appellee General Motors Corporation.

WILEY, J. Plaintiff's claim herein is for personal injuries sustained by her while a passenger in a motor vehicle which was involved in an accident with another motor vehicle at the intersection of U. S. Route 127 and Williams County Road K.

The trial court granted the motion for summary judgment filed on behalf of the defendant General Motors Cor-

poration, and it is from that judgment of the trial court that the appeal herein was taken.

On July 13, 1968, plaintiff, Susan A. Burkhard, age 16, was a passenger in the front seat of a 1965 Chevrolet automobile involved in a collision with an automobile operated by defendant Short, now deceased. The cause of the collision was unrelated to the alleged defect in design. An unpadded steel cowl (dashboard) projected toward the passenger's seat and, on impact, plaintiff was thrown forward, striking her face upon the steel cowl, causing severe injuries.

The trial judge for the Court of Common Pleas of Williams County granted the motion for summary judgment on behalf of defendant General Motors Corporation.

Plaintiff filed a notice of appeal, and an assignment of error in this court on the one single statement that the judgment of the trial court was contrary to law.

The specific point involved in this case is the duty of the manufacturer as it relates to negligent design, as distinguished from negligent construction. There is no claim in this case that the materials were faulty or defective in themselves, or defective in construction.

In the Restatement of the Law by the American Law Institute, Torts 2d., Section 398, Chattel Made Under Dangerous Plan or Design, the general rule is stated:

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the use for which it is manufactured is subject to liability to others * * *."

Section 402A, relating to special liability of the seller of a product, applicable to a manufacturer also, states as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer * * *."

Is a manufacturer liable for injury sustained by a passenger in an automobile as a result of a collision not caused by the alleged defect in design of the automobile in which the passenger was riding? No, say the courts in

the following cases: *Evans* v. *General Motors Corp.* (C. C. A. 7, 1966), 359 F. 2d 822; *Kahn* v. *Chrysler Corp.* (S. D. Tex., 1963), 221 F. Supp. 677; *Enders* v. *Volkswagenwerk* (1968), CCH Products Liability, 5930; *Walz* v. *Erie-Lackawanna Rd. Co.*, CCH Products Liability, 5722; and *Biavaschi* v. *Frost*, CCH Products Liability Reporter No. 2, Manufacturers, Distributors, Retailers Current Decisions No. 6547, in the Superior Court of New Jersey, Law Division, Bergen County, dated June 5, 1970.

In *Biavaschi*, the court held that the widow of a motorist, who sustained fatal injuries when the steering wheel of his Corvair struck him in the head after he was involved in a 50-mile-per-hour rear-end collision with another vehicle, had no actionable claim against the manufacturer of her husband's car, the court stating that no liability follows where alleged faulty or defective design is not a proximate cause of the accident. The trial court cited the cases of *Larsen* v. *General Motors Corp.* (1968), 391 F. 2d 495; *Dyson* v. *General Motors Corp.* (1969), 298 F. Supp. 1064; and *Mikcle* v. *Blackmon* (S. C. 1969), 166 S. E. 2d 173.

However, the New Jersey court also cited *Evans* v. *General Motors Corp.*, *supra,* and other cases cited in the defendant's briefs herein, and came to the conclusion that *Evans* and *Shumard, infra,* reflect the majority view and are consonant with the law of New Jersey.

In *Evans*, the "defect" was an X-frame which allegedly permitted the left side of the automobile to collapse when it was struck broadside by another automobile. The court stated that the manufacturer had "a duty to test its frame only to ensure that it was reasonably fit for its intended purpose." (Defect *not* obvious.)

In *Kahn*, it was stated that the duty of a manufacturer extends to "ordinary use of the vehicle" and that the manufacturer has no obligation to so design his automobile that it would be safe for a child to ride his bicycle into same while the automobile was parked. (Obvious situation.)

In Enders, a motorist, injured in a head-on collision

while driving a Volkswagen automobile, claimed that the injury, not the collision, was caused by failure of the design to guard against the effects of a collision. (The defendant there was a retailer, but the statement of the court is applicable.) The manufacturer had no duty, under the circumstances described, to the operator of the Volkswagen. The court, in the *Enders* case, stated as follows:

"This court is in no position to impose upon the automotive or any other industry a requirement or duty of vehicle design to minimize the effects of head-on collisions. * * * To impose the duty of preparing inexpensive cars against head-on collisions seems beyond the realm of sensible public policy."

In the *Walz* case, *supra,* the Federal District Court in Indiana indicated that the manufacturer had no duty to make a vehicle which was safe to collide with trains, indicating further that if such requirements were to be imposed the policy-making bodies should decide, not the courts.

In cases referring to Ohio law, or decided by Ohio courts, the same results have been reached. *Gossett* v *Chrysler Corp.* (C. C. A. 6, 1966), 359 F. 2d 84; *Shumard* v. *General Motors Corp.* (S. D. Ohio. Ed., 1967), 270 F. Supp. 311; *Blissenbach* v. *Yanko* (1951), 90 Ohio App. 557; *Snipes* v. *General Motors Corp.*, CCH Product Liability, 6037 (Ohio, C. P. Clark County 1968).

In *Gossett,* the facts indicated that the hood of an automobile opened in travel and that the latch would close securely unless the safety device was manually out of place. It was stated that the duty of the manufacturer in designing his product was to fairly meet any emergency of use reasonably anticipated. The court stated further that the manufacturer was not an insurer, insuring that his product, from design view-point, was incapable of producing injury. The cause was remanded to the District Court, with instructions to dismiss the complaint.

In *Shumard,* Chief Judge Weinman did cite with approval *Evans* v. *General Motors Corp., supra,* indicating that the issue of alleged negligence in design was identical

to that in *Evans*. The facts in *Shumard* indicated that the plaintiff's decedent was in an automobile collision with another vehicle and was killed while in a 1962 Corvair automobile which erupted into flames arising after the collision. Judge Weinman dismissed the complaint on motion of the defendant, General Motors Corporation, for the reason that the complaint failed to state a claim against the defendant upon which relief could be granted. *Blissenbach, supra,* was cited in the opinion of Judge Weinman. The second paragraph of the syllabus of *Blissenbach* is as follows:

"A vaporizer is not per se a dangerous instrumentality, and where there is no hidden or latent defect in its construction, liability for injury to a purchaser-user thereof cannot be predicated upon the mere fact that such article is equipped with a loose and easily removable lid which is designed to act as a natural safety outlet in the event the aperture provided for escaping steam becomes clogged."

In the Court of Common Pleas of Clark County, Ohio, in the case of *Snipes, supra,* the trial judge, Goldman, in an opinion citing many of the cases submitted by the defendant herein, sustained the demurrer of defendant, General Motors Corporation, stating:

"* * * it is quite clear that no liability follows where such faulty or defective design was not a proximate cause of the accident which caused the injuries complained of * * *. Whether or not the boundaries of liability should be expanded to the extent urged upon this court by the plaintiffs is a determination which will have to be made by the Legislature and not by the court, no matter how desirable the end sought may appear to be."

The plaintiff herein claims that the modern trend is otherwise as indicated in the case of *Larsen* v. *General Motors Corp., supra* (391 F. 2d 495), decided on March 11, 1968, by the U. S. Court of Appeals, Eighth Circuit. This was a case originating in the Federal District Court of Minnesota in 1967, reported in 274 F. Supp. 461, in which the trial court rendered summary judgment in favor of the manufacturer on the theory that the alleged defect in de-

sign did not cause the accident and that the law imposes no duty of care in the design of an automobile to make it *more safe* to occupy in the event of a collision. The Eighth Circuit Court reversed and remanded for proceedings not inconsistent with the opinion. The plaintiff-driver received injuries while operating a 1963 Chevrolet Corvair on February 18, 1964, as a result of a head-on collision involving the left front corner of the Corvair, causing a severe rearward thrust of the steering mechanism into the plaintiff's head. The plaintiff alleged that the design was such that the solid steering shaft was placed in such a manner as to extend without interruption from a point 2.7 inches in front of the leading surface of the front tires to a position directly in front of the driver, and thereby exposed the driver to an unreasonable risk of injury from the rearward displacement of the shaft in the event of the left-of-center head-on collision. The plaintiff does not contend that the design caused the accident. We quote from the headnotes, as follows:

"5. Manufacturer's duty of design and construction extends to producing product reasonably fit for intended use and free of *hidden defects* which could render it unsafe for such use. (Emphasis ours.)

"6. In determining 'intended use' for which products must be reasonably safe, manufacturer has duty to take into consideration the environment in which product will be used.

"7. Manufacturer has no duty to make product accident-proof or foolproof, but is liable when *unreasonable* danger is created, in accordance with general negligence principles. (Emphasis ours.)

"8. Manufacturer of automobile is under duty to use reasonable care in design of vehicle to avoid subjecting user to unreasonable risk of injury in event of collision, which, whether with or without fault of user, is clearly foreseeable.

"* * * *

"10. Duty of manufacturer to use reasonable care in design so as to avoid unreasonable risk of injury or so as

to minimize injurious effects rests on common law negligence.

"11. Design defect not causing accident does not subject manufacturer to liability for entire damage, and there may be apportionment.

"* * *

"14. Failure to use reasonable care in design, or knowledge of defective design, gives rise to reasonable duty on manufacturer to warn of condition, and manufacturer's duty includes duty to inspect and to test.

"15. Where danger is obvious and known to product user, no warning is necessary and no liability attaches for injury occurring from reasonable hazards attached to use of chattels or commodities, but where dangerous condition is latent it should be disclosed."

At page 501, the items set forth in headnotes 5 and 6 are commented upon, as follows:

"Accepting, therefore, the principle that a manufacturer's duty of design and construction extends to producing a product that is reasonably fit for its intended use *and free of hidden defects* that could render it unsafe for such use, the issue narrows on the proper interpretation of 'intended use.'" (Emphasis ours.)

And at page 505, the court, in regard to headnote 15, stated:

"If, because of the alleged *undisclosed defect in design* of the 1963 Corvair steering assembly, an *extra hazard is created over and above the normal hazard,* General Motors should be liable for this unreasonable hazard. Admittedly, it would not sell many cars of this particular model if its sale's 'pitch' included the cautionary statement that the user is subjected to an extra hazard or unreasonable risk in the event of a head-on collision." (Emphasis ours.)

Plaintiff also cites the cases of *Dyson* v. *General Motors Corp.* (1969), 298 F. Supp. 1064 (alleged defective design in roof of Buick hardtop wherein the court advanced the principle "that courts should impose a duty upon automobile manufacturers to produce a reasonably crashworthy car," and indicated further that a plaintiff who

brings himself reasonably within the provisions of Section 402A, Restatement of the Law, Torts 2d, is entitled to recover for a "second accident"); *Grundamanis* v. *British Motor Corp.* (D. C. Wisconsin, E. D., 1970), 308 F. Supp. 303 (ruptured fuel tank followed by flaming fire, the court adopting the reasoning expressed in *Larsen, supra*); and *Badorek* v. *General Motors Corp.* (1970), 11 Cal. App. 3d 902, 90 Cal. Reptr. 305 (ruptured fuel tank followed by flaming fire). In the latter case, the court, at page 314, quoted Section 402A of the Restatement of Torts that: "One who sells any product in a defective condition *unreasonably dangerous* to the user or consumer * * * " (emphasis ours), and stated: "The Corvette was 'in a defective condition unreasonably dangerous' to them [plaintiffs] because of defective design."

In the case *sub judice* the important distinguishing fact from *Larsen, supra,* is that the unpadded cowl projecting towards the passenger was entirely obvious, and at the time of purchase of the automobile a padded cowl was available. In Larsen, had the court been considering an obvious defect in design, its decision might well have been the reverse of what it was.

We cite with approval the following statement from *Larsen, supra,* at page 506:

"The common law is not sterile or rigid and serves the best interests of society by adapting standards of conduct and responsibility that fairly meet the emerging and developing needs of our time."

Under some conceivable circumstances a manufacturer could be held liable for injury suffered by a passenger as a result of defective design, even though the defective design was not the proximate cause of, or related to, the cause of the collision.

This court holds that a plainly visible, unpadded steel cowl, sometimes known as a dash or dashboard, projecting toward the passenger's seat in a 1965 Chevrolet automobile, which is not shown to be unusual or unique in design as a departure from the design of all other automobile manufacturers or of all other automobiles by the same

manufacturer, cannot be considered unreasonably dangerous within the meaning of Section 402(A), Restatement of the Law, Torts 2d. Under the facts of the case before us, the manufacturer has no duty to the passenger injured by contact with an obviously unpadded cowl which could have been made "safer" by padding and by recessing the same.

The judgment of the trial court is affirmed, at costs to plaintiffs-appellants, and the cause is remanded for execution for costs.

*Judgment affirmed.*

POTTER, P. J., and BROWN, J., concur.