Andrew GREEN, Individually and as next friend of Tammy K. Green, a minor, Plaintiff-Appellant,

v.

VOLKSWAGEN OF AMERICA, INC., Defendant-Appellee.

No. 72-2224.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1973.

Decided Oct. 12, 1973.

Eugene Field, Kalamazoo, Mich., for plaintiff-appellant.

Ronald R. Pawlak, Southfield, Mich., for defendant-appellee.

Before WEICK, EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Plaintiff-appellant's cause of action on behalf of his minor daughter was dismissed on motion for summary judgment by the United States District Court for the Western District of Michigan.

Appellant's brief complaint stated that his daughter, Tammy, then 11 years old, had lost a finger when she was "passing the left rear body panel of said automobile, her right ring finger became caught in a body vent where a sharp concealed piece of metal severed her finger through the proximal phalanx."

The complaint also alleged that defendant was the United States sales subsidiary for Volkswagen A. G. of Germany, engaged in distributing automobiles "in particular, a 1956 Volkswagen Bus, vehicle #180093," and that "the said automobile was not merchantable and fit for the general purpose for which it was manufactured and sold, in that the automobile had been manufactured with dangerous and defective body vents."

Defendant filed an answer which denied any defect in the vehicle and asserted that "plaintiff's complaint fails to state a cause of action against this defendant."

The relevant facts before the court were supplemented by plaintiff's affidavit saying:

"NOW COMES Andrew Green, plaintiff in the instant action who

says that the Volkswagen involved was parked three spaces back from the sidewalk in a parking lot adjacent to his home and had remained motionless in such position for about one month.

"Deponent further says that the left rear body vents of said Volkswagen were defective, hazardous and dangerous in that the edges of the openings were so pressed or formed that they had sharp knife-like cutting edges which condition was concealed from view."

Tammy's deposition had also been taken as to how the accident happened. It indicated that on the date in question she had been playing ball with her little brother on a parking lot next to her house where the Volkswagen bus was parked:

\* \* \* \* \* \*

"A. Well, I threw the ball to my little brother, and he went and ran and I tried to catch him, and I ran by the bus and I slipped and fell and it got caught in there.

\* \* \* \* \* \*

A. And he ran around the house, our neighbor's house, and I went after him, and I ran by the bus and got my finger caught in the vent.

Q. Now you were running and you say you slipped and you fell?

A. Yeah, after I got it caught in the vent.

Q. Well, did you slip and fall against the vent?

A. No. I slipped right along the side of it, of the truck.

Q. All right, you were running, and you got near the truck?

A. Yeah.

Q. As you got near the truck, did you start to slip?

A. No. That was after I got my finger caught in the vent.

Q. How did you come in contact with the truck? That is what I can't quite figure out.

A. I don't know.

Q. You mean you got your hand up against the truck some way or the bus in some way?

A. Yeah.

Q. How did you do that? Was it because you were falling? Was that it?

A. No. I was just running by. I didn't even start to fall until after my finger got caught in the vent.

Q. You caught your finger in the vent and then you started to fall?

A. Yeah.

Q. I see. Now looking at this picture, could you tell me in which one of those vents you caught your finger in? I know it might be hard for you to remember, but do you have any idea at all?

A. No."

The District Judge in granting defendant's motion for summary judgment held:

"The court concludes as a matter of law that plaintiff, as the facts reveal in this case, used[1] the Volkswagen in a manner unintended by the manufacturer. While the court recognizes that a product may have more than one use, and conceivably a Volkswagen bus, by its nature and physical make-up, offers several uses, plaintiff here did not use the Volkswagen bus in a manner which would entitle her to claim that the bus was therefore not reasonably fit for the purposes for which she used it."

This action is within the federal court's jurisdiction solely because of diversity of citizenship and, hence, we apply Michigan law. In a series of cases

---

1. Defendant contends that plaintiff did not use the Volkswagen since the bus was parked. For the purposes of this motion, the court concludes, without deciding, that the bus was in fact "used" by plaintiff.

starting in 1958, the Michigan Supreme Court abolished the defense of privity in products liability cases where the complainant relied upon an implied warranty. Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873 (1958); Mazoni v. Detroit Coca-Cola Bottling Co., 363 Mich. 235, 109 N.W.2d 918 (1961); Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129 (1965).

In the last case (involving a claim of defect in a shotgun cartridge), the Michigan Supreme Court made it clear that the Michigan concept of products liability extended not only to a subsequent purchaser of the alleged defective product, but also to an injured third party bystander:

> Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873; Manzoni v. Detroit Coca-Cola Bottling Co., 363 Mich. 235, 109 N.W.2d 918; Barefield v. LaSalle Coca-Cola Bottling Co., 370 Mich. 1, 120 N.W.2d 786, and Hill v. Harbor Steel & Supply Corp., 374 Mich. 194, 132 N.W.2d 54, have put an end in Michigan to the defense of no privity, certainly so far as concerns an innocent bystander injured as this plaintiff pleads, and that a person thus injured should have a right of action against the manufacturer on the theory of breach of warranty as well as upon the theory of negligence. Piercefield v. Remington Arms, *supra* at 98, 133 N.W.2d at 135.

■ It is not beyond foreseeability for the distributor (and the manufacturer) to have known that this Volkswagen bus would on many occasions be used for parking where children were playing. *See* Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968). Under *Piercefield* we have no doubt that defendant in this case did owe a duty not to sell a product which it knew (or should have known) to be defective so as to pose a hazard to a child who came in contact with it while playing in its vicinity.

The most succinct statement of Michigan's products liability law is contained in the *American Coupling* case:

The court instructed the jury as follows:

> "To recover, the plaintiff, Mr. Heckel, must show * * * the following things. Number one, * * * that there was a defect in the hose assembly when it left the manufacturing plant of the defendant.

> "And he must also show that the defect was a proximate cause of the injury in this case. * * *"

The substance of that charge was repeated a number of times in the judge's instructions. It constitutes a correct and proper statement of the law with respect to liability for breach of implied warranty and what plaintiff must prove to be entitled to recover under that theory. Piercefield v. Remington Arms Company, Inc. (1965), 375 Mich. 85, 133 N.W.2d 129; Manzoni v. Detroit Coca-Cola Bottling Company (1961), 363 Mich. 235, 109 N.W.2d 918; Rex Paper Company v. Reichhold Chemicals, Inc. (W.D.Mich.1966), 252 F.Supp. 314; Barefield v. LaSalle Coca-Cola Bottling Company (1963), 370 Mich. 1, 120 N.W.2d 786. As defendant says in his brief, all of these cases stand for the proposition that there must be a defect attributable to the manufacturer and a causal relationship between that defect and the injury complained of in order for there to be recovery on implied warranty. Heckel v. American Coupling Corp., 384 Mich. 19, 21–22, 179 N.W.2d 381, 383 (1970).

■ Of course, the proof of "a defect" requires proof that the defect existed at the time the product left the possession of the manufacturer. It also requires proof that the nature of "the defect" was such that the manufacturer under the reasonable man standard could have foreseen that someone might be injured thereby.

These issues, however, are issues of fact and under Michigan law are for jury determination. Crowther v. Ross Chemical Co., 42 Mich.App. 426, 202 N. W.2d 577 (1972); Garmo v. General Motors Corp., 45 Mich.App. 703, 207 N. W.2d 146 (1973). In the *Ross Chemical* case a father whose two daughters had been murdered by a glue sniffer brought suit against the manufacturer of the airplane glue involved. Plaintiff claimed the product was not safe for public use, asserting both design defect and failure to warn concerning the hazards of glue-sniffing. The Michigan Court of Appeals held that a motion for summary judgment had properly been denied and that the issue of expectability (foreseeability) of the use alleged was an issue of fact for the jury.

In our instant case likewise we think summary judgment is inappropriate. Whether Tammy's "use" of this Volkswagen was expectable or foreseeable was a jury question under Michigan law. Clearly, as we have shown above, no chain of title or permission to use is required under Michigan law. In a diversity case we are required to follow the applicable state law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The dissent implies that this opinion holds that under Michigan law a parked automobile is a dangerous instrumentality or that a distributor of an automobile is the insurer of the safety of all persons who may come in contact with it. Neither of these holdings is to be found in Michigan law nor in this opinion.

The actual issue in this case concerns whether or not under Michigan law plaintiff has a right to a jury trial. The dissent would deny that right. We believe, on the contrary, that under Michigan law plaintiff has the right to present evidence to a jury on the claims that Tammy's injuries were (1) caused by a defect in the Volkswagen bus (2) which defendant knew or should have known existed at the time it put the bus in commerce (3) which defect defendant

knew or should reasonably have known might cause the type of injury which Tammy suffered and (4) which was in fact a proximate cause of her injury. Under Michigan law all of these issues are jury issues unless there are no disputed facts or inferences.

The dissent's primary reliance is upon the law of states other than Michigan. We are aware that this case might be decided differently under the law of other states. But Michigan has taken a strong position against disposing of negligence cases on motions for summary judgment.

Two authoritative commentators on Michigan law have expressed the matter thus:

> In negligence cases, even though there may be no dispute as to the quantitative or physical facts, summary judgment will almost always be inappropriate because the qualitative issue of whether defendant exercised reasonable care will be in dispute and must be left for the jury, unless on the undisputed physical facts a judge would say that a directed verdict would be required—which is to say that there really is no negligence issue for the jury. In such cases summary judgment has been allowed in negligence cases and should be.

1 J. Honigman & C. Hawkins, Michigan Court Rules Annotated 360 (1962).

In one of the two Michigan cases relied upon by the dissent the opinion for the court said:

> A reading of opinions of this Court written during the past 15 years may suggest that a majority of the Court as from time to time constituted, has viewed with disfavor the granting by trial courts of summary judgments for defendants in negligence cases. In the instant case, however, not a controverted question of fact is presented by the pleadings which, if resolved in plaintiff's favor, would entitle him to judgment against defendant.

Fisher v. Johnson Milk Co., Inc., 383 Mich. 158, 174 N.W.2d 752 (1970). In Miller v. Miller, 373 Mich. 519, 524, 129 N.W.2d 885, 887 (1964), the court said:

"As a general rule, it can not be doubted that the question of negligence is a question of fact and not of law". Detroit & Milwaukee R. Co. v. Van Steinburg, 17 Mich. 99, 118.

It is because the question of negligence is a question of fact and not of law and because its existence depends upon conformance with or violation of standards of behavior peculiarly within the special province of a jury to determine, that the summary judgment procedures of GCR 1963, 117.-2(3), rarely will be applicable to a common-law negligence case. Exceptions, of course, may be found—such as where no duty of care can be proved. In such circumstances, assuming there "is no genuine issue as to any material fact" relevant to the existence of an asserted duty, the trial court may determine as a matter of law that no cause for action exists. But this is not such a case.

In Byrnes v. Economic Machinery Co., 41 Mich.App. 192, 201, 200 N.W.2d 104 (1972), the court made this comment on the question of foreseeable use or misuse:

A manufacturer has a duty to use reasonable care in designing his product to guard against an unreasonable and foreseeable risk. Gossett v. Chrysler Corp., 359 F.2d 84 (CA 6, 1966); Farr v. Wheeler Manufacturing Corp., 24 Mich.App. 379, 180 N.W.2d 311 (1970); Harper & James, The Law of Torts (1956), § 28.5, pp. 1543, 1545. *This may even include misuse which may be reasonably anticipated.* See Brown v. General Motors Corp., 355 F.2d 814, 820 (CA 4, 1966); Marker v. Universal Oil Products Co., 250 F.2d 603, 606 (CA 10, 1957). (Emphasis added).

In Beardsley v. R. J. Manning Co., 2 Mich.App. 172, 175, 139 N.W.2d 129, 130

(1966), the Michigan Court of Appeals reversed a summary judgment stating:

It is, of course, axiomatic that a summary judgment or decree will not be upheld where there are material issues of fact raised on the pleadings. Kaminski v. Standard Industrial Finance Co. (1949), 325 Mich. 364, 38 N.W.2d 870. Any inferences to be drawn from the underlying facts pleaded or contained in the counter affidavit must be viewed in the light most favorable to the party opposing the motion.

*See also* Sparks v. Luplow, 372 Mich. 198, 125 N.W.2d 304 (1963); Anderson v. Gene Deming Motor Sales, Inc., 371 Mich. 223, 123 N.W.2d 768 (1963); Tacie v. White Motor Co., 368 Mich. 521, 118 N.W.2d 479 (1962); Killen v. Benton, 1 Mich.App. 294, 136 N.W.2d 29 (1965).

The judgment of the District Court is vacated and the case is remanded for further proceedings.

WEICK, Circuit Judge (dissenting).

The decisions of the Courts of the State of Michigan, in my judgment, cannot be read as holding that an automobile is a dangerous instrumentality, or that the manufacturer or distributor of an automobile is an insurer of the safety of, and is liable for injuries to, all persons who may come in contact with it, including those persons who may misuse it.

In my judgment the Court's opinion does not comport with Michigan law, nor with prior decisions of this Court, and is contrary to the general rule on the subject of products liability.

The automobile involved in this case was a Volkswagen bus of the vintage of 1956. At the time of the accident it was sixteen years old. The owner of the VW bus had parked it lawfully in a parking lot, where it had remained standing for more than a month, and it was not in operation at the time plaintiff ran into the left rear side of it, in broad daylight.

Plaintiff, an 11-year-old girl, was playing with her little brother in the parking lot. She threw a ball to him, and then ran after him. As she ran along the side of the bus she caught her right ring finger inside the air vent for the motor, which vent was located near the rear of the bus. Her finger was severed through the proximal phalanx. Her complaint, in which she demanded judgment against the defendant in the amount of $200,000, alleged that the cutting of her finger was caused by "a sharp concealed piece of metal." She did not know how she happened to come in contact with the bus. In her deposition plaintiff testified:

"Q. How did you come in contact with the truck? That is what I can't quite figure out.

A. I don't know.

Q. You mean you got your hand up against the truck some way or the bus some way?

A. Yeah.

Q. How did you do that? Was it because you were falling? Was that it?

A. No. I was running by. I didn't even start to fall."

There was no claim that the vent protruded from the side of the bus. It is clear that plaintiff's injury to her finger was caused by the child's insertion of her finger inside the vent itself.

The Michigan Court of Appeals, in Farr v. Wheeler Mfg. Corp., 24 Mich. App. 379, 386, 180 N.W.2d 311, 315 (1970), adopted our statement as to the rule for design liability. The Court said:

"Gossett v. Chrysler Corporation (CA 6, 1966), 359 F.2d 84, 87, set forth the rule for design liability:

'It is the duty of a manufacturer to use reasonable care under the circumstances to so design his product as to make it not accident or foolproof, *but safe for the use for which it is intended.* This duty includes a duty to design the product so that it will fairly meet any emergency of use which can reasonably be anticipated. The manufacturer is not an insurer that his product is, from a design viewpoint, incapable of producing injury.'" (Emphasis added)

In Fisher v. Johnson Milk Co., 383 Mich. 158, 174 N.W.2d 752 (1970), the Court quoted Campo v. Scofield, 301 N. Y. 468, 95 N.E.2d 802 as follows:

" 'If the manufacturer does everything necessary to make the machine function properly *for the purpose for which it is designed,* if the machine is without any latent defect, and its functioning creates no design or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a machine is accident proof or foolproof. . . .' "

The Court further quoted from Stevens v. Durbin-Durco, Inc., 377 S.W.2d 343 (Mo.1964), as follows:

" 'Since practically any product, regardless of its type or design, is capable of producing injury when put to particular uses, a manufacturer has no duty so to design his product to render it wholly incapable of producing injury. . . .' "

The Court further approved and quoted at length from Jamieson v. Woodward & Lothrop, 101 U.S.App.D.C. 32, 247 F.2d 23 (1957).

The District Judge in the present case held that the child's use of the bus was not for the purpose for which it was intended.

The Courts generally have denied liability in cases factually similar to the case at bar.

In Hatch v. Ford Motor Co., 163 Cal. App.2d 393, 329 P.2d 605 (1958), a 6-year-old child walked into the radiator ornament of a parked automobile. The ornament pierced the child's eyeball, causing loss of the eye. The Court held as a matter of law that the defendant was not required to anticipate or foresee

and guard against the risk of such an injury. The Court said:

"If, in the present case, the minor plaintiff had stumbled as he approached the vehicle and struck his face against a headlight lens causing it to fracture and lacerate his eye, the question of duty to make the vehicle safe to collide with would be clearly presented under a claim that if the headlight lens had been made of safety glass the plaintiff would not have lost his eye; or, if the plaintiff had collided with the side of the car and his eye been impaled upon a radio antenna which had been telescoped so that its point protruded but a few inches above the body of the car, again the claim might be made that this created a danger which might have been avoided by enclosing the radio antenna within the body of the car so as not to protrude therefrom. In other words, each case in which a person collided with a standing vehicle and received some injury from a part of the vehicle which injury he might not have sustained had the vehicle been constructed in some other manner would raise a question of fact as to whether the manufacturer was liable to that person. In effect the triers of the facts would be the arbiters of the design of automobiles and the standard of design would be determined not when the automobile was manufactured but after the occurrence of an accident." (329 P.2d at 607–608).

In Kahn v. Chrysler Corp., 221 F. Supp. 677 (S.D.Tex.1963), a 7-year-old boy rode his bicycle into the rear of a 1957 Dodge vehicle, striking his head against the left rear fin of the vehicle. He alleged negligence in designing the fin "in such a manner that the fins of said vehicle were elongated and protruded past the remainder of the vehicle and made of sharp metal capable of cutting." The Court granted summary judgment in favor of defendant. It found no Texas authority dealing with the precise

question. It cited and followed the rule in *Hatch, supra.* The Court said:

"Chrysler Corporation should not be required to anticipate all the possible ways in which a person may injure himself by falling against an automobile, nor should they have a duty to protect against such possible injuries. The duty of the automobile manufacturer extends to the ordinary use of the vehicle, and may even be such as to cover certain situations when the automobile is being negligently used. But the manufacturer has no obligation to so design his automobile that it will be safe for a child to ride his bicycle into it while the car is parked." (221 F.Supp. at 679).

In Schneider v. Chrysler Motors Corp., 401 F.2d 549 (8th Cir. 1968), the plaintiff recovered a verdict and judgment of $40,000, for injuries to his right eye, which injuries were sustained when his eye came into contact with the left front window vent in his 1960 Valiant automobile. The left window vent had a microscopic cutting surface not present on the right window vent. The District Court granted judgment for Chrysler notwithstanding the verdict, both on the issues of negligence and implied warranty. The Appellate Court (Judges Blackmun, Mehaffy and Gibson) affirmed, citing and quoting from *Hatch.*

The standard of safety of goods is the same under the warranty theory as under the negligence theory. 2 Harper & James, The Law of Torts, § 28.22, p. 1585 (1956).

Comment "h" to restatement (second), torts, § 402 A (1965) states:

"A product is not in a defective condition when it is safe for normal handling and consumption."

In the present case the bus was safe for normal handling and usage.

In Evans v. General Motors Corp., 359 F.2d 822 (7th Cir. 1966), the Court held:

"A manufacturer is not under a duty to make his automobile accident-

proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all. Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802, 804. Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law. Campo v. Scofield, supra, 805." (*Id.* at 824).

In Burkhard v. Short, 28 Ohio App.2d 141, 275 N.E.2d 632 (1971), the Court held:

> "A manufacturer of automobiles has no duty to a passenger injured by contact with an obviously unpadded cowl which could have been made 'safer' by padding and by recessing the same." (Syl. 2)

The Ohio Appellate Court relied on Gossett v. Chrysler Corp., 359 F.2d 84 (6th Cir. 1966), *Evans (supra)* and *Kahn (supra)*, and also cited the decision of Chief Judge Weinman in Shumard v. General Motors Corp., 270 F. Supp. 311 (D.C.1967), holding that—

> "No duty exists to make an automobile fireproof, nor does the manufacturer have to make a product which is 'accident proof' or 'fool proof.' "

In Warner v. Kewanee Mach. & Conveyor Co., 411 F.2d 1060 (6th Cir. 1969), cert. denied, 398 U.S. 906, 90 S. Ct. 1685, 26 L.Ed.2d 65 (1970), (a Michigan case) this Court held in an opinion written by Judge Peck, that the manufacturer of a portable farm elevator, used to load straw into a haymow, had no duty to adopt a design representing the ultimate in safety. The Court relied on *Gossett*, and held there was no proof of negligent design or violation of implied warranty.

In the present case, the part of the majority opinion most damaging to automobile manufacturers and distributors is that which erroneously extends the foreseeability doctrine to misusers of the automobile, for virtually every type of misuse is foreseeable; *Hatch, supra, Evans, supra, Shumard, supra*, and *Schneider, supra*.

As well stated by the Supreme Court of Illinois in Mieher v. Brown 301 N.E. 2d 307 (Ill.1973), CCH Products Liability Rptr., ¶ 6972, in a case involving a collision of an automobile with the rear of a truck:

> "The question in our case involves the duty of the manufacturer to design a vehicle with which it is safe to collide."

In rejecting the application of the foreseeability rule, the Court said:

> "[W]e do not believe . . . that the foreseeability rule applied in *Larsen*[1] is intended to bring within the ambit of the defendant's duty every consequence which might possibly occur. *In a sense, in retrospect almost nothing is unforeseeable.*" (Emphasis added).

The majority relied on Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968), and Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129 (1965). Such reliance is misplaced, for neither one of these cases involved misuse of the product. In a later opinion, however, the Eighth Circuit, in Schneider v. Chrysler Motors Corp., 401 F.2d 549 (8th Cir. 1968), distinguished *Larsen* stating:

> "In the *Zahn, Larsen* and *Blitzstein* [Blitzstein v. Ford Motor Co., 288 F. 2d 738 (5 Cir.)] cases, the respective automobiles subjected their users to an *unreasonable risk of harm* when the automobiles *were being used for the purpose intended*; the accidents and resultant injuries were held foreseeable. In applying the doctrine of foreseeability the particular injury or precise form of the injury need not be perceived or foreseen, but if there is some probability of harm sufficiently

---

1. Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968) distinguished by the same Court in Schneider v. Chrysler Motors Corp., 401 F.2d 549 (8th Cir. 1968).

serious that an ordinary reasonable person would take precautions to avoid it then failure to take such care is negligence. As reviewed in Swearngin v. Sears Roebuck & Company, supra, at 642 of 376 F.2d [637, 10 Cir.]:

'* * * [I]t is generally held, regardless of whether the question of "foreseeability" is treated as a problem of "duty," "negligence," or "proximate cause," that it is not necessary that the defendant might or should have foreseen the likelihood of the particular injury or harm, the extent of the harm, or the manner in which it occurred, but that it is only necessary that he should have anticipated that some injury or harm might result from his conduct. 100 A.L.R.2d 980; Rowell v. City of Wichita, 162 Kan. 294, 176 P.2d 590 (1947) and Atherton v. Goodwin, 163 Kan. 22, 180 P.2d 296 (1947) cited as authority.'

In the case at bar, the Valiant automobile was not being used for the purpose intended, and the left wing vent window, even if we assume that it has a microscopic cutting surface, did not present an unreasonable risk of harm. While it might not be incorrect to say that 'but for' the cutting surface on the left wing vent window Schneider would not have sustained a lacerated eyeball, such a statement does not serve to fix legal liability for Schneider's unfortunate accident on the manufacturer; it is overstraining a manufacturer's duty to foresee that individuals would inadvertently allow their eye to come in contact with the glass edge of a wing vent window on a parked automobile. A manufacturer is not an insurer and cannot be held to a standard of duty of guarding against all possible types of accidents and injuries. Standards of design and manufacturing skill must be consonant with the stage of the art and the risks to be avoided must be foreseeable." [Footnotes omitted.] (Id. at 556–557).

Thus *Larsen*, as distinguished by the same Court, does not support the majority opinion here.

*Piercefield* involved a defective cartridge, which is a dangerous instrumentality, and as previously pointed out, Michigan Courts have not held that an automobile is a dangerous instrumentality.

In *Piercefield* the injury was to a bystander, and the primary issue was privity.

As well stated in Evans v. General Motors Corp., 359 F.2d 822 at 825 (7th Cir. 1966):

"The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur. As defendant argues, the defendant also knows that its automobiles may be driven into bodies of water, but it is not suggested that defendant had a duty to equip them with pontoons."

In referring to the dissent, the majority states:

"The actual issue in this case concerns whether or not under Michigan law the plaintiff has a right to a jury trial. The dissent would deny that right."

The dissent would deny that right only where, as here, under the uncontroverted evidence there is no genuine issue as to any material fact.

The dissent relied on the most recent decision of the Supreme Court of Michigan on the subject of products liability. In Fisher v. Johnson Milk Co., 383 Mich. 158, 174 N.W.2d 752 (1970), summary judgment for the defendant was sustained. The Court stated:

"In the instant case, however, not a controverted question of fact is presented by the pleadings which, if resolved in plaintiff's favor, would entitle him to judgment against the defendant."

This is true here. There was not a single controverted issue of fact for a jury to determine. The only witness to the accident was the plaintiff, and her testimony has been detailed previously in this dissent. Taking her testimony as true, she cannot recover.

The majority cited and quoted from Byrnes v. Economic Machinery Co., 41 Mich.App. 192, 200 N.W.2d 104 (1972), wherein a mechanic, while working on a complex labelling machine, removed therefrom a safety guard, and when his right hand was in the machine his supervisor ordered the machine activated, resulting in injury to the mechanic. The Court had some difficulty in distinguishing Fisher v. Johnson Milk Co., *supra*, and the cases relied upon in *Fisher*. The Court then stated:

"We cannot agree with the contention that where a machine is subject to continual maintenance and an accident occurs during such maintenance, the machine is not being used as intended or that the misuse is unanticipated where the injured party takes no unnecessary risks in performing his job. Defendant knew that continual maintenance was necessary, and whether it had a duty to provide safeguards against foreseeable unreasonable risks which could occur while maintenance was taking place is a question for the trier of fact." (41 Mich.App. at 201–202, 200 N.W.2d at 108).

*Byrnes* is thus distinguished from the case at bar because there the machine was being used for the purpose intended. In our case, the bus was not being used by the child for the purpose it was intended.

In discussing the matter of directed verdicts in negligence cases, the Supreme Court of Ohio in Peters v. B. & F. Transfer Co., 7 Ohio St.2d 143, 219 N.E.2d 27 (1966), held:

"Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his trial by jury when he has the right." (Syl. 8)

It is significant that the Court has not cited a single Michigan case wherein recovery was ever allowed against an automobile manufacturer to a person who was injured by running into the side of a standing automobile. The Michigan courts are fully capable of establishing the law of that state on products liability, and we are required to apply it. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

While considerable progress has been made in recent years by the automotive industry in the development of safety standards, no one has yet come up with a design which would prevent injury to a person who runs into the side of a standing vehicle.

District Judge Engel followed Michigan law in holding that the "defendant is required to manufacture or supply a product reasonably fit *for its intended use.*" (Emphasis added). In granting the motion for summary judgment he held that under the uncontroverted evidence the plaintiff did not use the VW bus for its intended purpose. Fisher v. Johnson Milk Co., *supra*.

In my opinion the judgment of the District Court is correct and should be affirmed.