BAREFIELD *v.* LA SALLE COCA-COLA
BOTTLING COMPANY.

1. ACTION—DERIVATIVE ACTION BY HUSBAND.
    A husband's right to recover in his derivative action depends
    entirely upon wife's right to recover in her action for breach
    of implied warranty of defendant's product as fit for human
    consumption.

2. FOOD—IMPLIED WARRANTY OF FITNESS FOR HUMAN CONSUMPTION.
    A food processor's implied warranty that its product is fit for
    human consumption should be applied only when its food is
    used in the usual, rather than in the unusual and improper,
    manner, hence, plaintiff should not have continued to drink
    defendant's product after she discovered, or should have dis-
    covered, that it contained glass particles, a warrantor not
    being a guarantor against injury to consumers resulting from
    the consumer's misuse of the product.

3. SAME—IMPLIED WARRANTY OF FITNESS FOR HUMAN CONSUMPTION
    —SOFT DRINK—INSTRUCTIONS—EVIDENCE.
    Jury's verdict for defendant food processor *held*, not against the
    great weight of the evidence adduced in action for breach of
    implied warranty that the soft drink was fit for human con-
    sumption, where it appears that when contents of bottle were
    half consumed, plaintiff should have discovered something was
    wrong and that she should not have continued to drink it
    without examination, as she then proceeded without reliance
    upon defendant's implied warranty of fitness, and trial court's
    single use of technical term *assumption of risk* in instruction

---

* Continued from Volume 369 Michigan.

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur, Husband and Wife § 501.
[2, 3, 4, 5] 22 Am Jur, Food §§ 103–108, 116.
    Liability of manufacturer or seller for injury caused by beverage
    sold. 77 ALR2d 215.

did not erroneously distort an essentially correct statement of an available defense.

4. SAME—IMPLIED WARRANTY OF FITNESS FOR HUMAN CONSUMPTION —EVIDENCE OF TECHNIQUES FOR EXCLUSION OF IMPURITIES.
Admission of evidence of defendant food processor's methods and techniques for excluding impurities from its bottled product for the purpose of negating probability that glass particles entered the bottle at defendant's plant *held*, proper in action for breach of implied warranty of fitness for human consumption of its product.

5. SAME—IMPLIED WARRANTY OF FITNESS FOR HUMAN CONSUMPTION —GREAT WEIGHT OF EVIDENCE.
Verdict for defendant food processor in action for breach of implied warranty of fitness for human consumption *held*, not against the great weight of the evidence, where jury could have found that plaintiff had suffered no injury, that her injury occurred after she had discovered, or should have discovered the glass particles in the bottle of soft drink, or that the glass particles did not get into the bottle while it was under defendant's control.

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted December 6, 1962. (Calendar Nos. 108, 109, Docket Nos. 49,160, 49,161.) Decided April 5, 1963.

Case by Annie Lee Barefield against La Salle Coca-Cola Bottling Company, a Delaware corporation, and others on implied warranty for personal injuries sustained by reason of glass particles in beverage. Derivative suit by Johnnie Barefield. Cases consolidated for trial and on appeal. Verdict and judgments for defendants. Plaintiffs appeal. Affirmed.

*Henry G. Marsh,* for plaintiffs.

*Stanton, Taylor, McGraw & Collison (John W. McGraw,* of counsel), for defendants.

SOURIS, J.   The defendant beverage producer won jury verdicts of no cause in these consolidated suits by husband and wife for its alleged breach of an implied warranty that its product was fit for human consumption.   Plaintiff wife claims to have been injured by particles of glass she ingested while consuming the contents of a bottle of defendant's product.   Her husband's suit sought recovery of medical expenses and damages for loss of her services.   For convenience, we shall speak only in terms of the wife's action, for her husband's right to recover depends entirely upon her right to recover.

Plaintiff testified that when she had consumed about 1/2 of a bottle of Coca-Cola, directly from the bottle, she gagged on what she thought was tobacco from the cigarette she then was smoking or on ice, which she noticed had formed inside the bottle.   She went into a bathroom, cleared her throat, spat into a commode and, having gained relief, returned to finish the bottle of Coca-Cola.   As she swallowed the last draught, she again gagged and again retreated to the bathroom where she removed a piece of glass from her mouth, again spat into the commode and, for the first time, saw blood there, which she might have expectorated on her first trip to the bathroom. When she put a napkin to her mouth, blood stained the napkin.

On such evidence the trial judge instructed the jury, at defendant's request, as follows:

"If you find by a preponderance of the evidence that the defendant's implied warranty of fitness was breached, then you must also consider whether or not the plaintiff Mrs. Barefield upon discovering that something had irritated her throat while consuming about 1/2 of the contents of such a bottle of Coca-Cola, and then proceeding to consume the balance of the contents of the Coca-Cola bottle, acted as a rea-

sonably prudent person would have acted under the same circumstances.

"If you find that plaintiff continued to finish the drink of Coca-Cola after she knew or had such a reason that she should have known of an irritation to her throat from some foreign substance in the bottle, and her assumption that it was either her cigarette tobacco or ice slivers, was unreasonable and that she should not therefore have assumed that the product was reasonably fit for consumption, you may find that she assumed the risk of whatever damages or injuries if any she sustained, and under those circumstances plaintiff cannot recover from the defendant company."

Plaintiff challenges the foregoing instruction on the ground that it improperly imports tort concepts into an assumpsit action for breach of implied warranty, citing *Bahlman* v. *Hudson Motor Car Co.*, 290 Mich 683 (7 NCCA NS 790).

Dean Prosser tells us that the action for breach of an implied warranty, as we know it today, is "a freak hybrid born of the illicit intercourse of tort and contract." Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale LJ 1099, 1126. Drawing upon Ames, Williston and Street, he concludes that, "A more notable example of legal miscegenation could hardly be cited than that which produced the modern action for breach of warranty. Originally sounding in tort, yet arising out of the warrantor's consent to be bound, it later ceased necessarily to be consensual, and at the same time came to lie mainly in contract." With such background and development, it is not surprising that concepts of tort law have been applied in such cases. See *Hertzler* v. *Manshum*, 228 Mich 416, at 423. *Bahlman* v. *Hudson Motor Car Co., supra,* relied upon by plaintiff, was an assumpsit action on an express warranty and may be distinguished on that ground,

although in other jurisdictions concepts akin to contributory negligence have been applied as defenses to actions on express warranties. See cases collected by Prosser at footnote 288, 60 Yale LJ 1099, at 1147.

In *Cheli* v. *Cudahy Brothers Co.*, 267 Mich 690, this Court held there was no implied warranty by defendant that its pork was fit for human consumption in a raw state. However, the opinion seems also to suggest, as an alternative ground for decision, that a food processor's implied warranty of fitness should be applied only when its food is used (p 697) "in the usual, rather than in the unusual and improper, manner." What this amounts to is recognition by this Court that warrantors are not to be held as guarantors against injury to consumers resulting from the consumer's misuse of the product. Just as it was appropriate for *Cudahy* to rely upon the defensive claim that its pork was improperly eaten raw, so the defendant at bar was entitled to claim that plaintiff should not have continued to drink its product after she discovered, or should have discovered, it contained glass particles. The proofs were such that the jury could have found, following the challenged instruction, that plaintiff's injuries occurred only after she had warning that something was wrong with her Coca-Cola; that she should not have continued thereafter, without examination, to consume the remainder of her drink; and that, having done so in disregard of the known danger, it cannot be said that she proceeded in reliance upon defendant's implied warranty of fitness. Use of the technical term "assumption of risk" in the instruction may better have been avoided, but its single use in this particular instruction, without encumbrance by its technical definition, did not distort what was essentially a correct statement of an available defense.

Plaintiff also complains that the trial court should have excluded evidence of defendant's processing methods and techniques for excluding impurities from its bottled product. As in *Manzoni* v. *Detroit Coca-Cola Bottling Co.*, 363 Mich 235, plaintiff's right to recover depended upon the jury's finding that the impurity was present when the product left the defendant's control. Defendant's challenged proofs of due care, while they would be admissible also in defense of a negligence action, were offered and admitted in this case for the purpose of negating the probability that the glass particles entered the bottle of Coca-Cola at defendant's plant, and for this purpose the proofs were properly received.

Finally, plaintiff asserts that the jury's verdict was against the great weight of the evidence. There would be no benefit to the profession in a detailed recitation of the testimonial record. It is sufficient to note that the jury properly could have found, on this record, that plaintiff suffered no injury, or that her injury occurred after she discovered or should have discovered the glass particles, or that the injurious glass particles did not get into the bottle while it was under defendant's control. Under such circumstances, we do not reverse on the claim that the jury's verdict was against the great weight of the evidence.

Affirmed. Costs to appellee.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, and SMITH, JJ., concurred.

O'HARA, J., took no part in the decision of this case.