David SILBERGLEIT, Plaintiff–
Appellant,

v.

FIRST INTERSTATE BANK, OF
FARGO, N.A., Defendant–
Appellee.

No. 93–3327.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1994.

Decided Oct. 5, 1994.

JOHN R. GIBSON, Senior Circuit Judge.

Following an adverse jury verdict in his age discrimination suit, David Silbergleit appeals from an order of the magistrate judge[1] denying his motion for judgment notwithstanding the verdict or a new trial. He claims the magistrate judge should have granted his motion because: 1) counsel for First Interstate Bank of Fargo made several improper remarks; and 2) the verdict was contrary to the evidence. We conclude that several comments and questions by the bank's attorney constituted prejudicial error, and therefore, we reverse the magistrate judge's order and remand for a new trial.

Silbergleit argues counsel for the bank inquired about three irrelevant and prejudicial subjects. Because these are the only issues we reach, we need not recite the details underlying Silbergleit's discrimination claim.

First, Silbergleit complains about references to and questions about his personal wealth. Over Silbergleit's objection, the bank put into evidence Silbergleit's 1991 and 1992 personal income tax returns. While cross-examining Silbergleit, the bank's counsel asked Silbergleit about interest income he earned from his bond holdings, including the following:

Q. So if—even if you had some investments that weren't quite as good and at 5 percent, you would own over a million dollars of municipal bonds?

A. Oh, what I want to tell you is that—

Q. Is that a yes or is that a no?

A. Yes. But—

Q. Okay.

A. —I had a lot of 13 percenters in there from years ago so this wouldn't make your analogy all correct.

Q. So it's not quite a million dollars?

A. It wouldn't be anywhere near that.

Q. Are you suggesting to me that you are not a millionaire?

Although the court sustained Silbergleit's objection to the bank's final question, and instructed the jury that the amount of hold-

Randolph E. Stefanson, Moorhead, MN (Todd W. Foss, on the brief), for appellant.

J. Philip Johnson, Fargo, ND (Robert A. Feder, on the brief), for appellee.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MAGNUSON *, District Judge.

---

* The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota, sitting by designation.

1. The case was tried by a United States Magistrate Judge, by consent of the parties.

ings that Silbergleit has or had at the time he was employed was not relevant, the bank's counsel later obtained testimony from another witness about Silbergleit's assets. The bank's representative at trial, Beaton, who presumably was present at the court's earlier admonition, testified that Silbergleit made clients "fee conscious." When asked about the basis for his allegation, Beaton testified:

Q. What other evidence do you have that you could share with us with respect to what this fee bias means?

A. At one point in time, David [Silbergleit] approached me at a point in time when we were attempting to develop assets. We had made note of the fact that we were going to try and grow the asset bases of the department and he approached me individually and advised me that he would move his one million dollar personal trust account to us provided we waive the fees.

Silbergleit urges that the bank representative's answer was not responsive to the question, and was simply part of the bank's strategy to portray Silbergleit as rich. The magistrate judge agreed that the bank counsel's questions about Silbergleit's wealth were irrelevant and prejudicial. *Silbergleit v. First Interstate Bank*, No. A3–92–98, slip op. at 4 (D.N.D. Aug. 31, 1993). Nevertheless, the court decided that the statements were not sufficiently prejudicial to warrant a new trial, reasoning that the court mitigated the prejudice by instructing the jury to disregard the amount of Silbergleit's holdings. *Id.* It is highly significant that a bank officer made this latter statement as to Silbergleit's $1 million personal trust account after the court's first instruction that Silbergleit's wealth was not relevant.

Silbergleit also contends that prejudicial error occurred when the bank's counsel questioned him about unemployment compensation benefits. Although the magistrate judge ruled that unemployment compensation benefits were not deductible from damages, the court permitted counsel to delve into the fact that Silbergleit received unemployment benefits to show Silbergleit's lack of diligence in finding another job.

Silbergleit argues that such benefits are not deductible from a damage award, and thus, the magistrate judge erred in admitting this evidence. *See Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* § 5.12, Committee Comments (1993). He contends the admission of this evidence was prejudicial, especially in light of questions about his personal wealth. Silbergleit also complains about the court's failure to instruct the jury that a damage award is not reduced by unemployment compensation benefits. In denying Silbergleit's new trial motion, the court acknowledged that it ruled that unemployment benefits are not deductible from damages, but also stated that the federal circuits are split on the issue. Slip op. at 5. It concluded that because of the conflict in the law, the bank's counsel did not act unconscionably in questioning Silbergleit. *Id.* The court also determined that the error was harmless because the jury never reached the issue of damages. *Id.* The magistrate judge stated that the subject of unemployment benefits would be commented upon in instructions at the end of the trial, yet she refused an instruction Silbergleit offered clearly informing the jury that unemployment benefits should not be deducted from an age discrimination award.

Finally, Silbergleit urges that reversible error occurred when the bank's counsel referred to Silbergleit's religion. During Silbergleit's cross-examination, the bank's counsel indicated to the jury that he was Jewish and that Silbergleit was also Jewish. For example, counsel stated that only he and Silbergleit would know what the Yiddish word, "nachos [sic],"[2] meant. Similarly, counsel referred to "what you and I call tachlos [sic]."[3] Counsel also asked Silbergleit whether he had filed any claim of discrimination on the basis of religion. When Silbergleit denied filing a claim on the basis of religion, counsel then asked why he did

2. Condensing the somewhat fanciful definition given by the bank, the Yiddish word "naches" seems roughly equivalent to "pride."

3. The bank defines "tachlis" as "down to brass tacks."

not file such a claim. Finally, counsel tried to impeach another witness[4] by asking: "And, of course, since 1985, you've had a rather strong dislike for me because of my response to your statement in the paper what the Waffen–SS did to the Jews in World War II." While acknowledging that the bank's counsel implied that Bonemeyer was anti-Semitic and perhaps a Nazi sympathizer, and that the bank's counsel "exceeded the bounds of appropriate impeachment," the court concluded the questioning did not reflect on Silbergleit, and therefore, did not prejudice him. Slip op. at 6.

The bank has explanations for each of Silbergleit's allegations of prejudice. It characterizes Silbergleit's allegation of prejudice stemming from the use of two Yiddish words in a week-long trial as "absurd and outrageous." It says the exchange occurred in the midst of a discussion designed to show that the term "shooting dogs" has a colloquial meaning in some circles not unlike Yiddish words in Jewish circles. The bank defends its interrogation of Bonemeyer as the proper subject of cross-examination. The bank argues that the court properly admitted Silbergleit's tax returns to compare Silbergleit's income before and after the termination, as well as to show the existence of substantial capital which Silbergleit could now reinvest free of restrictions imposed on him as a trust officer. Finally, the bank defends its inquiry into unemployment benefits on the ground that the magistrate judge did not decide admissibility issues until the fourth day of trial, and that the Eighth Circuit law on this question is unclear. The bank acknowledges the Eighth Circuit Model Jury Instructions that unemployment benefits are not deductible from a damages award, but argues that the authority for the instruction, *Doyne v.*

*Union Electric Co.,* 953 F.2d 447 (8th Cir. 1992), deals with a deduction for pension, not unemployment, benefits.[5]

■■■ A question by counsel that places prejudicial information before the jury may warrant a new trial. *Sanders–El v. Wencewicz,* 987 F.2d 483, 484 (8th Cir.1993); *McBryde v. Carey Lumber Co.,* 819 F.2d 185, 188 (8th Cir.1987). We give great deference to the ruling of the trial judge on questions of evidence. Unless the error is promptly and clearly preserved by objection, we do not reverse. The trial judge has broad discretion in deciding whether a question is so prejudicial as to warrant a new trial, and we review this ruling for abuse of discretion only. *McBryde,* 819 F.2d at 188.

■■ In the case before us, the magistrate judge instructed the jury to disregard the evidence of Silbergleit's wealth, but later allowed another question to be answered by a bank officer on this subject. The magistrate judge stated that she would instruct at the conclusion of the evidence on the receipt of unemployment benefits, but she denied a proposed instruction on this subject. Silbergleit failed to object to the several questions and comments relating to Silbergleit's religion. We believe, however, that the mix of religion, wealth and receipt of unemployment benefits presented a powerful combination of irrelevant evidence having no bearing on the merits of the case, that were designed to impassion and prejudice the jury against Silbergleit.

Under these circumstances, our recent decision in *Sanders–El* is instructive. In that case, after the trial court had sustained an objection to evidence about the plaintiff's arrest record, defense counsel dropped a lengthy computer printout in front of the

---

4. Dr. Maurice Bonemeyer, one of Silbergleit's former customers, testified that Silbergleit provided "[a]bsolutely excellent" service. On cross-examination, the bank's counsel attempted to impeach Bonemeyer. First, he brought out the fact that Bonemeyer had sued a partner in the bank counsel's law firm. Second, he attempted to elicit that Bonemeyer's real reason for testifying was that he had a personal grudge against the bank's counsel because of a letter he had written in response to a quote made by Bonemeyer in the local newspaper.

5. We note that the comment cites cases from other circuits holding that unemployment benefits are not deductible from a damage award. *See Manual of Model Civil Jury Instructions for the District Courts for the Eighth Circuit* § 5.12, Committee Comments (1993). After trial, this court held that unemployment benefits should not be deducted from awards of backpay under the Age Discrimination in Employment Act. *Gaworski v. ITT Commercial Financial Corp.,* 17 F.3d 1104, 1114 (8th Cir.1994), *cert. denied,* ——

jury. We began by recognizing that improper questioning by counsel generally entitles the aggrieved party to a new trial if it conveys improper information to the jury and prejudices the opposing litigant. *Sanders–El*, 987 F.2d at 484 (quoting *Williams v. Mensey*, 785 F.2d 631, 637 (8th Cir.1986)). *Sanders–El* pointed to the court's duty to prevent the jury from considering extraneous issues and to guard against the influences of passion and prejudice. *Id.* at 484. We said that the misconduct of counsel may be such that its effect cannot be overcome by admonishing the jury or rebuking counsel; in such case a court should grant a new trial. *Sanders–El* focused not only on counsel's conscious impropriety, but on the nature of the information that counsel attempted to bring before the jury. We said that whether errors had a significant prejudicial influence on the jury is "a fine question of judgment in which precedents give little guidance." *Id.* at 485. We also observed that the case was a close one, which increased the possibility that improper conduct could have influenced the jury's verdict. Moreover, the printout incident was neither isolated nor accidental, but counsel repeatedly attempted to use irrelevant and prejudicial evidence.

In the context of the entire trial, we are convinced that the magistrate judge abused her discretion in denying Silbergleit's new trial motion.[6] It is not necessary that we decide whether any one of these evidentiary issues would be a sufficient basis for the grant of the new trial, as that is not the issue before us. When all the objectionable episodes are viewed together, however, we conclude that evidence came before the jury that was improper and prejudicial. *See* Fed. R.Evid. 401. In so far as there is any doubt that portions of the evidence were not the subject of objection, the evidence, taken together, certainly is plain error. Silbergleit's religious beliefs have absolutely no relevance in this lawsuit. The bank's counsel cannot escape responsibility for these questions and

comments by claiming that he would not attempt to elicit anti-Semitism from the jury because he himself is a Jew. References to Silbergleit as a millionaire and to his receipt of unemployment compensation benefits were also highly prejudicial. As Silbergleit suggests, the totality of the bank counsel's line of questions and comments emphasized irrelevant information having no bearing on the issues of the case, and demonstrated a persistent effort to get this information before the jury. The introduction of this evidence was such as to distract the jury from considering the evidence on the material issues before it. As a result, Silbergleit did not receive a fair trial. Therefore, the magistrate judge abused her discretion in denying his motion for new trial.

We reverse and remand for a new trial.

U.S. ——, 115 S.Ct. 355, —— L.Ed.2d —— (1994).

**6.** Because we decide that a new trial was warranted because of the improper questions and answers, we do not reach the issue of whether the magistrate judge erred in refusing to order a

new trial because the verdict was contrary to the weight of the evidence. In our earlier decisions we have expressed doubt as to whether we may consider such an argument. *See Lee v. Rapid City Area School Dist.*, 981 F.2d 316, 332 (8th Cir.1992) (en banc); *Green v. American Airlines, Inc.*, 804 F.2d 453, 455 (8th Cir.1986).